R. R. Swepson *v.* Exchange & Dep. Bank *et al.*

AND

First Nat. Bank of N. Y. *v.* Ex. & Dep. Bank *et al.*

1. CHANCERY PLEADING. *Multifariousness.* A bill by a judgment-creditor of an insolvent bank, whose sole stockholder is personally liable for its debts, is not multifarious for seeking to obtain satisfaction by setting aside a fraudulent conveyance by the bank, recover judgment against the stockholder, and set aside fraudulent conveyances by him, and also remove a cloud cast on title by the fraudulent conveyances.

2. SAME. *Creditor's bill.* An objection that a creditor of an insolvent corporation files his bill for his own use only, is obviated by the fact that the suit has been consolidated with another filed for all creditors.

3. FRAUDULENT CONVEYANCE. *Fraud in law.* A trust-deed is not fraudulent on its face because no time is specified for the sale of the prop-

erty conveyed; and the trustee, a young man without property, and excused from bond, is authorized to rent until sale; and allowed to sell on credit in his discretion; and to compromise or arbitrate any matter of litigation; and do all other proper and necessary acts as fully as could the grantor; and the amount of the preferred debts is not specified.

4. REGISTRATION. *In what book?* A trust-deed conveying realty is notice to the world, when properly acknowledged and noted for registration, though it be registered in the chattel-mortgage book.

5. INSOLVENT BANK. *Conveyance by, void.* Assets of an insolvent bank are trust-funds for the creditors, and a conveyance thereof is fraudulent and void.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

T. S. WEBB and H. H. TAYLOR for complainants.

LOGAN & LUCKEY and W. M. BAXTER for respondents.

DEADERICK, C. J., delivered the opinion of the court.

These two cases were consolidated and heard together and decrees rendered, from which the complainants in both bills, and defendants Exchange and Deposit Bank, John Baxter, and Wm. M. Baxter, trustee, have appealed to this court. The defendants appeal only from the decree in favor of Swepson.

Swepson had obtained judgment in the circuit court of Knox county, at its October term, 1876, against the Exchange and Deposit Bank, for upwards of $3,000. Upon appeal by defendant, the judgment was affirmed

by this court, at its September term, 1878. Execution issued upon said judgment in November, 1878, and was levied upon a lot in Knoxville, adjoining the lot of Col. Terry and others, and known as the Fouche lot, and sold by the sheriff in January, 1879, to Swepson, and deed executed to him by the sheriff.

The proceeds of sale, some $275, after deducting charges and certain proceeds of personalty sold, were credited on the execution, leaving a large part of said judgment unsatisfied, and there were no other assets of the bank for the satisfaction of said balance.

In the meantime, John Baxter, who had theretofore been president of said Exchange and Deposit Bank, resigned his position as president, and Lewis T. Baxter, in 1876, became president thereof.

John Baxter, being the sole stockholder in said bank, while he was president, advanced various sums to pay off depositors and other creditors of the bank, amounting, about the time he resigned its presidency, to the sum of near $30,000.

In January, 1876, after Lewis T. Baxter became president of the Exchange Bank, it is alleged that he conveyed three lots in Sneed, King & Co.'s addition to Knoxville, to John Baxter, described as lots 257, 258 and 259, for the expressed consideration of $3,266, cash in hand paid. This conveyance is alleged to have been null and void, and without consideration, as well as the conveyance of the Fouche lot. That these four lots were all the unencumbered property the bank had in January, 1876, and that it was then insolvent, and John Baxter, the sole stockholder, was by the

terms of its charter individually liable for its debts, and that these conveyances were made to hinder and delay the creditors of said bank; that the property of the bank was primarily liable for its debts to depositors, before those due a stockholder.

Said Lewis T. Baxter, as president of said bank, in February, 1877, also conveyed to John Baxter, individually, the Fouche lot in Knoxville, in part payment of the advances made by John Baxter for the bank, besides certain debts due the bank, which are perhaps now, and were then, of little or no value.

On the 30th of January, 1878, defendant John Baxter made a deed of trust to secure his creditors, upon his own property, including therein the three lots conveyed to him by Lewis T., as president of the bank, and the Fouche lot.

This deed, which was registered soon after its execution, made his son, Wm. M. Baxter, trustee, and relieved him from the obligation to give security for the performance of the duties of trustee. It preferred certain creditors, with the provision for the payment of all his own debts and the debts of the Exchange and Deposit Bank. It is apparent, however, that the trust property will fall short of paying the preferred debts.

Swepson's bill is filed for the purpose of relieving the Fouche lot of the cloud upon his title, acquired by his purchase at sheriff's sale, in part extinguishment of his judgment, claiming that he had a lien upon it by virtue of his judgment, when the same was conveyed by Lewis T., president, etc., to John

Baxter; and this lien it is alleged, and so it appears from the record, was perfected by the issuance of execution and levy upon and sale of the lot.

It is also alleged that the trust deed conveyed no title to the trustee, because at the time of the filing of his bill, there had been no legal registration of said deed.

The bill further impeaches said deed, upon the ground that the trustee is a young man, without means, is excused from giving bond, and is given unlimited power as to the time and manner of the sale of the trust property.

It is also objected that the date and amount of the debts preferred are not given.

The bill prays that the deed for the lot adjoining Col. A. Terry and others, and lots 257–8–9, be set aside, and the deed of trust to Wm. M. Baxter be declared null and void, and for a decree against John Baxter individually as the sole stockholder of said bank, for the unpaid balance of the judgment against the bank.

Defendants John Baxter and others demur to the bill, upon the ground that it is multifarious, in seeking to remove a cloud upon the title to the Fouche lot; to declare fraudulent other conveyances of other lands, and to hold John Baxter liable to the payment of the debt because of his liability as sole stockholder, for all the debts of the Exchange and Deposit Bank; the defendants, Wm. M. and Lewis T. Baxter having no interest in that part of the case which seeks to hold John Baxter liable as stockholder for the bank's

debts, and because the bill should have been a general creditor's bill.

The demurrer was overruled and the defendants answered, denying fraud and insisting upon the validity of the several conveyances.

The bill of the First National Bank of N. Y., also a creditor of the Exchange and Deposit Bank, contains substantially the same allegations as those made by Swepson, and prays for the same relief, except that it appears to have been filed on behalf of all the creditors of said insolvent bank.

Similar demurrers were filed in this case to those filed in the Swepson case, and were overruled.

The court sustained Swepson's bill so far as to remove the cloud upon his title to the Fouche lot, but sustained the conveyance of John to Wm. M. Baxter, and appointed the latter receiver to take into his possession the assets of the bank for the benefit of its creditors, and held John Baxter liable for any balance due said creditors, upon the ground of his being the sole stockholder of said bank.

In the argument the defendants press the objection to Swepson's bill, that it is multifarious. No appeal, however, was taken from the decree in favor of the First National Bank of New York.

While the definition of multifarious, "the improperly joining in one bill distinct and independent matters, and thereby confounding them," is generally accepted and approved, yet it seems somewhat difficult to make application of it to cases as they arise. Perfectly distinct and unconnected matters against one

defendant, makes a bill multifarious: Sto. Eq. Pl., sec. 271, But under our statute this rule has been modified. It has been enacted that "the uniting in one bill of several matters of equity, distinct and unconnected, against one defendant, *is not* multifariousness:" Code, sec. 4327.

But the demand of several matters of a distinct and independent nature against several defendants in the same bill, would make the bill multifarious: Sto. Eq. Pl., sec. 271.

Thus, if A. should file a bill against B. and C., seeking to enforce a vendor's lien against B. and to foreclose a mortgage on a different tract of land belonging to C., we can readily see that the matters are wholly distinct and independent of each other. On the other hand, if a debtor makes a fraudulent conveyance of different portions of his property to different grantees, and they to others, all may be joined in the same bill as defendants. So, a bill may seek to set aside fraudulent conveyance and subject other property, not conveyed, to the satisfaction of complainant's claim, and is not multifarious: See 1 (Milliken's) Meigs' Digest, p. 697–8. A bill against several parties, where all their rights are so connected that the court can adjudge them, is not multifarious: 7 Bax., 333.

When a bill has but one object, the court may grant such relief as is incident thereto, and a bill to remove clouds from title, recover possession, and have account for rents and profits, is not multifarious: 7 Baxt., 616.

The object of Swepson's bill is to have satisfaction of his judgment against the Exchange and Deposit Bank. He alleges that Lewis T. Baxter, the president of the bank, after he obtained his judgment, conveyed the land levied on by him, before it was sold under his execution, and that John Baxter conveyed it to W. M. Baxter, trustee, who holds and claims the same under said deed, and he seeks to have this incumbrance removed and his title quieted.

He also seeks by his bill to have John Baxter's individual property subjected to the payment of his judgment, and the three lots conveyed by Lewis T., as president of the bank, to John Baxter, and by him to Wm. M. Lewis T., as president of the bank, the debtor of complainant, is a proper party in order to the granting of this relief. He represents the bank. John Baxter, as the sole stockholder, is bound by the bank charter for all the bank debts. He stands in the attitude of a surety for an alleged insolvent corporation, and the bill prays that he may be compelled to pay the debts which the bank is bound to pay and for which he is also bound; and to attain this object the bill prays that the conveyance of the Fouche lot and the three lots, Nos. 257–8–9, from Lewis T., president, to John Baxter and from him to Wm. M. Baxter, may be set aside, and that the conveyance of other property by said John Baxter to said trustee, for reasons stated in the bills, may also be set aside and declared void, and subjected to the payment of his debt.

It seems to us that these bills have but one object, the subjection of property and rights of the Exchange and Deposit Bank and of John Baxter, to the payment of their debts, and in pursuit of that object they may hold the defendants to account for property conveyed to them which should be so applied. It is conceded that John Baxter, as sole stockholder, is liable for the bank's debts, and it is charged that he has wrongfully conveyed his property to said trustee, and that belonging to the bank which its president had conveyed to him.

These three parties and the named beneficiaries in the trust deed, are made defendants to the bills, and we think properly. So there was no error in the action of the chancellor in overruling the defendants' demurrer. The objection that Swepson sues for his own use only, is answered in the fact that the two bills are consolidated, and Swepson's recovery will enure to the benefit of all the creditors, and it was so decreed by the chancellor, and the other bill is filed in behalf of all creditors.

The complainants attack the deed of trust of John Baxter as fraudulent in law, upon several grounds.

It is said the deed is fraudulent on its face, because no time is specified within which the property shall be sold, and the trust closed; and the trustee is authorized to rent, until a sale is made, which may be on credit or for cash; and to compromise or arbitrate any matter or litigation that may arise in the execution of the trust, and to do all other proper and necessary acts as fully as the grantor could do; and

the deed does not show how much is due to any of the preferred creditors.

No specific time is fixed for the sale of the property, or within which the trust shall be closed. But this omission does not amount to a stipulation in the deed for such delay in the execution of the trusts as would make it fraudulent. And it is intended that the trust may be executed without delay, and in fact part of the property had been sold and proceeds applied as directed, at the time the bills were filed. The stipulation for a sale upon credit, if deemed best by the trustee, does not of itself avoid the deed. It was not unreasonable to allow such discretion, if the interest of the secured creditors could thereby be promoted. And although in several New York cases, referred to by complainants' solicitors, the authority to sell on credit is held to render the deed void, we are not prepared to adopt such conclusion, especially in a case where it is conceded that the property conveyed is inadequate to the satisfaction of the preferred debts; nor do we see any sound reason why a trustee may not be invested with the power to settle by compromise or arbitration, any matter or litigation arising in the execution of the trust; nor is it a fatal objection to the deed that it does not state the amounts of the debts of the preferred creditors. Their names are given, and the amounts due them are readily ascertainable, being notes or bills. In the case of *Young* v. *Gillespie*, 12 Heis., 239, the decision seems to have been placed upon the ground that the provision, " that all others we owe for borrowed money," shall be first

paid, in which neither the names of creditors nor amounts of debts were given, was a "meditated subterfuge" to perpetrate a fraud. Upon the whole, we are of opinion that the trust deed is not void for any of the reasons insisted on by complainants.

It is also objected that the trust deed was not properly registered at the date of the filing of the bills, and that for this reason the complainants may subject the property therein mentioned to their debts. The deed was properly acknowledged and noted for registration, but it seems was recorded in the book for the registration of chattel mortgages, etc., and not in the book of trust deeds or conveyances of real estate. It was, after the bills were filed, registered in the proper book. Sec. 456 a directs the register to keep a book for the registration of trust deeds, etc. This section is directory to the register, and when a deed is noted and registered, it is notice to "all the world," from the time it is noted: Code, sec. 2073.

The chancellor decreed that said deed was not fraudulent in law nor in fact, and that it vested the trustee with the title to the property therein described, except as to the Fouche lot, as to which it gave Swepson the relief he prayed for. He further declared that the complainants were entitled to have the Exchange and Deposit Bank wound up as an insolvent corporation, and to have decrees against John Baxter as sole stockholder, for the amounts due complainants and other creditors of said bank, subject to credits for any sums realized from the assets of said bank. And the chancellor also directed the trustee to execute said

trust deed, and to pay over proceeds to the clerk and master, to the end that after deducting prior charges upon the fund, it might be applied towards the payment of the claims of the creditors of said bank, who were to be notified by publication to present their claims.

The decree will be modified as to the three lots, Nos. 257, 258 and 259, which were conveyed as the property of the bank, in 1877, to John Baxter by Lewis T. Baxter, president of the bank. The bank was insolvent at the time of this conveyance. And its assets at that time were a trust fund for the payment of all its creditors, and could not rightfully be perverted to the payment of a debt due its sole stockholder, who was also liable for its debts, and by him conveyed in trust for the payment of his individual indebtedness.

The deed, therefore, of said Lewis T. to John Baxter, and his trust deed to Wm. M. Baxter, are inoperative and void, so far as the attempted conveyance of the three lots is concerned, and these lots will be sold under the direction of the chancery court, and the fund arising therefrom will be applied to the satisfaction of claims of creditors of the said bank. In all other respects the chancellor's decree will be affirmed.

The costs of this court will be paid, one-half by complainants in the two bills, and the other half by John Baxter, and the cause will be remanded.